# CHARLESTON.

J. R. SMITH *v.* OLIE BLACK *et al.*

(No. 5409)

Submitted November 10, 1925. Decided November 17, 1925.

1. FRAUDS, STATUTE OF—*Date of Making Contract, and Not Date of its Execution or Commencement of its Performance, Controls.*

   For the purpose of the application of the statute of frauds, the date of the making of the contract, and not the date of its execution or the commencement of its performance, controls.  (p. 437.)

   (Frauds, Statute of, 27 C. J. § 87.)

2. SAME—*If Bilateral Contract for Sale and Repurchase of Goods is Fully Performed by One Party Within One Year, Statute of Frauds is no Defense.*

   Where a bilateral contract for the sale and repurchase of goods or chattels is fully performed by one of the parties within a year, the other party cannot successfully interpose the statute of frauds, section 1, paragraph 7, chapter 98 of the Code, as a defense to an action by the other party against him for a breach of the contract on his part, though it was not to have been performed by him within one year from its date.  (p. 438.)

   (Frauds, Statute of, 27 C. J. § 436.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Pendleton County.

Action by J. R. Smith against Olie Black and others. Judgment for defendants, and plaintiff brings error.

*Reversed.*

*E. L. Judy, H. M. Calhoun, A. J. Welton,* and *England & Ritchie,* for plaintiff in error.

*B. H. Hiner* and *R. M. Hiner,* for defendant in error.

MILLER, JUDGE:

In an action of assumpsit plaintiff sought to recover of defendants the sum of $906.36, the balance he alleged was due him on 25,295 pounds of cattle at ten (10) cents per pound, sold to defendants for delivery between September 25th and October 1, 1921, less the sum of $1,623.14, which he had realized on the sale of the cattle, on defendants' refusal to take and pay for them at the time and place stipulated in the contract.

Defendants pleaded non-assumpsit, on which issue was joined, on the issues thereby presented. On the trial, after plaintiff had adduced before the court and jury all his evidence, the court, on motion of defendants, struck out the evidence, and on the further motion of defendants, directed the jury to return a verdict for them, which was accordingly done; and to these rulings of the court and to its refusal to set aside the verdict of the jury and grant him a new trial, plaintiff excepted.

The defendants introduced no evidence, and in the court below and here predicated their defense solely on the application of the statute of frauds, paragraph 7, section 1, chapter 98 of the Code, providing that contracts not to be performed within a year must be in writing and signed by the party to be charged thereby or his agent.

The evidence of the plaintiff on the trial as to the time and terms of the contract in substance was: That some time about the middle of September, 1920, he met defendant Black and learned he had some cattle he would sell; that Black priced the cattle to him; that he told Black he would not buy them unless he would agree to take them back, which

Black said he would do; that some time later in the month, date not fixed, in company with one Judy he went to Black's place to look at the cattle, and there met Black, who with Judy went up the creek to look at some other cattle, while plaintiff took a horse and went up on the mountain to look at Black's cattle, which he found, numbering 24 or 25 head, a few more than he wanted; that after looking at the cattle he went out on the mountain to the residence of one Morral, arriving late in the evening, where he found Black and made an agreement with him respecting the cattle. Stated in his own words on the witness stand, describing the agreement, he says: "I bought the cattle off of him there. I partly bought them, to take them up some time along about the first of October. Those that I did not want were to be thrown out. I told him there were a couple that I did not want to take. I bought the cattle and sold them back to him that evening. He told me Miley was going in with him on those cattle."

Following this evidence he further testified: "Q. What time did you take the cattle? A. Second of October. Q. When were they weighed? A. October second. Q. What price per pound did you pay? A. Nine cents. Q. You stated that Mr. Black agreed to purchase them, Mr. Miley to be in on the deal. That meant to be taken away the next year? A. Yes. Q. What time were they to be taken off the next year? A. My understanding was the 25th of September to the first of October. He claims earlier. That was my understanding of it, but he claimed when he talked with me it was earlier. That was my understanding. * * * Q. What was the price you received? A. Ten cents." Evidently meaning the price he was to receive.

On cross examination plaintiff testified in response to questions by defendants' counsel, referring to the date of his purchase of the cattle in September, 1920. "Q. That is the time you claim you bought the cattle from Black, and Black rebought them from you? A. Yes, that is the time he said he, Miley, was going in with him. I sold them back to them with that understanding. Q. At what time did you agree the cattle should go away? A. That I was to take them in

the fall. I don't know exactly what day. I took them on the second. I guess I took them about the time I said I would. Q. Your declaration says they were to go away between the 25th of September and the first of October? A. That was when they were sold. When they were sold they were to go away at that time. Q. When you sold them to whom? A. To Black and Miley.''

When on redirect examination with reference to what was done on October second, plaintiff testified: ''Q. Mr. Smith, I believe you stated that it was on the second day of October, 1920, that the cattle were weighed and you paid for them? A. Yes, 1920. Q. State what conversation, if any, you had with Black that day relative to the cattle? A. We weighed them that morning and I paid him for them. After we separated them I took out the ones I wanted, he helped me down off the mountain with them. We talked about the sale of them. He said, 'I want you to keep this to yourself. I don't want you to tell it where my father and mother will get it. They don't want me to be paying this kind of prices or buying ahead.' ''

The plaintiff proved by himself and a number of other witnesses that Black admitted his agreement with plaintiff to purchase the cattle sold him, and that to two or three witnesses he said he did not intend to take them on account of the drop in the market price.

In answer to the defense of the statute of frauds plaintiff's counsel rely on three propositions:

First: That the contract in question does not come within the terms of the statute of frauds, because the date of the agreement to repurchase should be as of the date of the weighing and separation of the cattle on October 2, 1920.

Second: That assuming a complete contract to repurchase the cattle when the parties first met on or about the middle of September, 1920, nevertheless, the date of the last reiteration or recognition of the contract by the party to be charged, on October 2, 1920, should be considered as determining the question of the application of the statute of frauds.

Third: That assuming that the contract should properly date from the middle of September, 1920, the facts disclosed

by the evidence did not bring it within the application of the seventh clause of the statute of frauds, for the reason that it was wholly performed by plaintiff on the one side.

Numerous decisions of this and other courts are cited and relied on by counsel in support of each of these propositions, which are vigorously combatted by counsel for defendants, relying on some of the same authorities cited by counsel for plaintiff and others cited by them.

The pivotal question is, when, for the purposes of the application of the statute of frauds, did the contract become complete and binding on the part of defendant? The question is not when under the contract did the title to the cattle pass from defendant to plaintiff and back from plaintiff to defendant. The answer to these questions, and whether the contract is executed or remains executory, our decisions say, always depends on the intention of the parties, to be determined from the terms of the contract, the situation of the thing sold, and the circumstances surrounding the sale. *Foster* v. *Frampton-Foster Lumber Co.*, 96 W. Va. 325, 328, and the decisions there cited and reviewed. For the purposes of the application of the statute of frauds the rule seems to be that the date of the contract, not the date when it is to be executed, governs. 27 C. J. 174, § 87b, and the many decisions cited, including our case of *Kimmins* v. *Oldham*, 27 W. Va. 258, opinion by Judge SNYDER. The same rule obtains where the contract provides for a future day for the beginning of performance of the contract; the date of the contract and not the date when it is to be performed or performance is to commence, governs. *Parkersburg Mill Company* v. *Ohio River Railroad Company*, 50 W. Va. 94.

Plaintiff's evidence, on which the contract solely depends, is that the contract was made about the middle of September, 1920; so that if the contract was simply a unilateral one, obligating the defendant to repurchase the cattle from the plaintiff between September 25th and October 1, 1921, and therefore not to be performed within a year from its date, September 15, 1920, it would be within the statute of frauds. *Kimmins* v. *Oldham, supra.*

But we are here dealing with a bilateral contract, one in which both contracting parties were bound to fulfill obligations reciprocally towards each other. According to the testimony of plaintiff, his purchase of the cattle from defendant was conditioned on defendant's agreement to repurchase them from him between September 25th and October 1, 1921. These were interdependent engagements, and if the one party was bound thereby, the other was bound also. It was to be performed by plaintiff to the extent of purchasing from defendant and paying for the cattle within one year, by the defendant in respect of the repurchase thereof beyond the year. In 2 Page on Contracts, (2nd ed.), p. 2240, § 1295, it is said on the authority of many decisions, English and American, cited, that: "In most jurisdictions it is held that the statute has no application to a contract which is to be performed on one side within the year and on the other side not within the year, or to a contract which may be performed on one side within the year and which cannot be performed on the other side within the year." While, this writer says in the same connection, that some jurisdictions hold to the contrary, and that their views seem to be correct on sound principle, yet he says they are overborne by the weight of authority.

But we think the legal rights and justice of the case as between the parties to the suit may properly be determined by the bilateral character of the contract, and the fact that it was fully performed within the year by the plaintiff. And we emphasize the fact that this is not a case of partial performance by one of the parties, but one of full performance by plaintiff. Partial performance will not be sufficient to take a case out of the statute of frauds, but full performance, the authorities say, will do so. Equity alone can relieve in cases of partial performance; or in some cases an action at law based on the quantum meruit will lie. Generally rights depending on partial performance are applicable only to sales and purchases of real property, and not of chattels. And when the case, though unilateral, contains several stipulations which are so interdependent that the parties cannot reasonably be considered to have contracted but

with a view to the performance of the whole, no recovery can be had upon the contract. Browne on the Statute of Frauds, (7th ed.), chap. ix, p. 179, et seq. But the case here is different from that assumed. Here the several obligations of the parties are mutual and interdependent; that is, that of plaintiff was based on the undertaking of the defendants. But for the contract of the latter to repurchase the cattle, the plaintiff would not have entered into the contract, fully performed by him within the year. In the leading case of *Lowman* v. *Sheets*, (Ind.), 7 L. R. A. 784, it was decided that the statute of frauds prohibiting the making of contracts by parol which are not to be performed within a year has no application to a contract which has been fully performed by one of the parties. The same proposition is affirmed in *Hodgens* v. *Shultz*, 92 Ill. App. 84. In *Chenoweth* v. *Pacific Express Co.*, 93 Mo. App. 185, it was decided that a complete performance of a contract by the promisee forecloses the promisor from interposing the statute of frauds as a defense, and the equity doctrine of part performance has no place in an action at law; also that mutual and concurrent promises may be a consideration for each other, and the fact that one is executory makes it none the less binding. And a court of very high repute says: ''The provision of the statute of frauds respecting contracts not to be performed within a year applies only to contracts not to be performed on either side within that time.'' *Smalley* v. *Green*, 52 Iowa, 241. Going outside of the country, we find it laid down in *Trimble* v. *Lanktree*, 25 Ontario Rep. 109, that the statute of frauds does not apply to a contract which has been entirely executed on one side within the year from the making so as to prevent an action being brought for the non-performance on the other side. Applied in a case involving a verbal contract for the delivery of sheep by plaintiff to defendant, fully performed by plaintiff within the year, and under which defendant was to deliver double the number of sheep to plaintiff within three years. And returning to our own side of the St. Lawrence and the Great Lakes, we find that it has been decided in Virginia that a parol contract which by its terms or by reasonable construction can be performed fully

on one side within a year, is not within the statute of frauds. Applied to a contract for personal services. *Thomas* v. *Armstrong,* (Va.), 5 L. R. A. 529, and notes citing other cases: also Browne on the Statute of Frauds, § 448, et seq. There is another case in Virginia where it is decided that entire performance on the part of one of the parties to a bilateral contract renders the statute inapplicable. This case involved the sale and purchase of stock in a corporation. *Reed* v. *McCormick & Gold,* 102 Va. 37. The sixth point of the syllabus in that case is: ''A contract that may be performed on either side within one year is not within the statute of frauds. It is not necessary that it should be performable on both sides in order to take it out of the statute.''

The proposition based on the question of reiteration of the contract by defendant, so as to make it referable to the date of the delivery of the cattle to plaintiff, need not be further considered. It is agreed that the mere repetition of the original contract on a later date will not change the date of the contract from the original to the later date. It must amount in fact to the making of a new contract. *Huebner* v. *Huebner,* 163 Wis. 166.

Enough has been written on the points discussed by counsel, we think, to justify our conclusion to reverse the judgment below, set aside the verdict, and award plaintiff a new trial, and it will be so ordered.

*Reversed.*