# CHARLESTON.

OSAGE GAS COMPANY *v.* CLEVELAND & MORGANTOWN COAL COMPANY

(No. 5465)

Submitted May 18, 1926.     Decided May 25, 1926.

1. TRIAL—*Even Though Testimony Was Introduced When it Was Not Admissible, if Subsequent Developments Make it Admissible, Verdict Will Not Be Set Aside Because of its Premature Introduction.*

   Even though it appear that testimony had been introduced at a time that it was not admissible, if the subsequent developments of the trial make it admissible before the case is

finally submitted to the jury, the verdict will not be set aside because of the premature introduction of such testimony. (p. 679.)

(Appeal and Error, 4 C. J. § 2964.)

2. APPEAL AND ERROR—*Admission of Incompetent Evidence Over Objection Will Not Reverse Judgment When it is Clear That Such Error Could Have Worked no Prejudice to Exceptor; in Action to Recover for Drilling Well, in Which Question Was As to Contract and Acceptance of Work and Material Thereunder, Exclusion of Evidence That Water Was Not Good Was Not Cause for Reversal.*

The admission of incompetent evidence over objection will not reverse a judgment when it is clear that such error could have worked no prejudice to the exceptor.   (p. 680.)

(Appeal and Error, 4 C. J. § 2952.)

3. SAME—*Refused Instructions on Lease Not in Record Will Not be Considered on Appeal.*

Where a lease is not in the record, nor the provisions thereof properly put in evidence, instructions based thereon and refused by the court will not be considered on appeal. (p. 682.)

(Appeal and Error, 4 C. J. § 2342.)

4. CONTRACTS—*Where, in Letter, Words of General and Indefinite Signification Are Used, Their Meaning Will be Determined by Consideration of Language Used, Conditions Surrounding Parties at Time, Circumstances Under Which Letter Was Written, and Purpose Sought to be Accomplished; if Parties Have Acted Under Provisions of Letter Using Words of General and Indefinite Signification, Their Acts, Amounting to Practical Construction of it, Will be Given Peculiar Weight in Deciding Meaning of Language used.*

Where, in a letter, words of general and indefinite signification are used, their meaning will be determined by a consideration, not only of the language used, but of the conditions surrounding the parties at the time, the circumstances under which the letter was written, and the purpose sought to be accomplished thereby; and, if the parties have acted under the provisions of such letter, their acts, amounting to a practical construction of it, will be given peculiar weight in coming to a conclusion as to the meaning of the language used.   (p. 681.)

(Contracts, 13 C. J. §§ 514, 517.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Monongalia County.

Action by the Osage Gas Company against the Cleveland & Morgantown Coal Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*E. M. Everly* and *Frank P. Weaver,* for plaintiff in error.
*Cox & Baker,* for defendant in error.

WOODS, JUDGE:

This is an action in assumpsit on the common counts, in which the plaintiff seeks to recover, as evidenced by its bill of particulars, $3,688.00, for casing, drilling, superintendency of drilling and tubing a certain water well. The case was tried by a jury, and a verdict for $3,182.92 was returned. From a judgment entered thereon, the defendant prosecutes this writ of error.

The following facts are disclosed by the evidence: The Purseglove Coal Mining Company and the defendant Cleveland & Morgantown Coal Company, both corporations, were engaged in mining coal on contiguous coal properties situate on Scott's Run, in Monongalia County. They were interlocking companies—occupying the same offices, and having the same general manager and superintendent in the persons of Samuel Purseglove and Joseph Stewart, respectively. From the record it appears that the Purseglove Company is the owner of a tract of land in Cass District, whereon it operates a coal mine. The oil and gas rights of said tract had theretofore been reserved by the former owner, Jessie Hall. Under date of December 11, 1922, J. M. G. Brown obtained a lease from Jessie Hall for oil and gas purposes upon said tract, and on January 31, 1923, Brown, by proper assignment transferred said lease to the plaintiff, Osage Gas Company. A well was drilled on this tract, in 1922, by the Purseglove Company, for the purpose of securing water for its own mining operations, and that of its affiliated and related company. At the depth of 800 feet a light flow of natural gas was struck. The cost of drilling this well was borne by both the Purse-

glove and the defendant company. The defendant company made a proposition to the plaintiff Gas Company to turn over the well to it upon the payment of the cost of drilling and casing the same. This proposition was accepted by the plaintiff, it owning the gas rights, and payment was made therefor in the sum of $2,776.04. The Purseglove Company seems to have receipted for this money. This well produced gas for only about thirty days. On March 26, 1923, just after the gas was exhausted, Mr. McDermott, the superintendent of the plaintiff company, received a letter from the defendant company, by its general manager, as follows: "I was just talking to Mr. Stewart in regard to the gas well that we had drilled on the Purseglove Coal Mining Company's land. We would like for you to drill this well on down for water as I understand the gas has all played out and under our agreement we would like for you to go on down with this before taking the machine away as the machine is now standing at the well. Would like to have this done as soon as possible." McDermott had been instrumental in taking over the well for the plaintiff. On being asked why he wrote Mr. McDermott, Purseglove, in his evidence, replied: "My dealings had always been with Mr. McDermott." Acting on the authority of this letter the plaintiff company drilled said well, or caused it to be drilled, 288 feet deeper, where a flow of fresh water was struck. The driller said that upon the completion he placed the tubing in the well with the machine at the instance of defendant company. Fred Zeck, a plumber, at the request of Samuel Purseglove, installed an air lift for the purpose of raising the water out of the well by means of compressed air. In answer to an interrogatory concerning whom he was working for, replied: "Anyway, I thought I was working for the Purseglove interests, primarily for the Cleveland & Morgantown Coal Company." The well was operated for some time thereafter by the defendant company. On May 11, 1923, Noah Moore, superintendent of the Osage Gas Company, mailed to the Cleveland & Morgantown Coal Company and the Purseglove Coal Mining Company, jointly, a statement of the cost of drilling the well down the additional 288 feet, as well

as including what the plaintiff company had previously paid
for the drilling and casing of the well, being the items set
out in the bill of particulars, with the exception of one item
for superintendence.   J. H. McDermott testified that after
this bill was sent that he talked with Mr. Purseglove two or
three times concerning it; that Purseglove, on being asked
when he was going to settle for it, stated that they would get
to it after while and get things straightened out—that they
were busy and had not got around to it; and that Purseglove
raised no objecion to the bill.   Joseph Stewart, superintend-
ent for the defendant company, made no reply to the plain-
tiff's letter of May 11th, until October 5th, 1923, when he
wrote: "I am returning to you your invoice for $3,616.04 for
which I wish you would send me corrected invoice for $840.00
which is the cost of the extra drilling that was done on this
well."

The absence from the record of certain evidence is admitted
by the counsel for defendant in error in his brief in the fol-
lowing language: "All of the plaintiff's testimony with re-
spect to the turning over to the defendant of the well, or of
the sale of the well, and all evidence adduced by the plaintiff
which was not related to the items set forth in the bill of par-
ticulars was objected to by the defendant, and the action of
the court in overruling the defendant's objections were ex-
pected to, but the record does not show these objections and
exceptions, and the defendant is thereby precluded from
taking advantage here of the record which was actually made
but not recorded by the stenographer.   Important exhibits,
namely the original lease made by Jessie Hall to Brown and
a lease made by the defendant to the plaintiff are likewise
omitted from the record."

There is no appreciable conflict in the evidence on the face
of the record.

The first error urged by the defendant goes to the admission
of the letter of the defendant to McDermott, on the ground
that the authenticity of a document must be established before
it is admitted as evidence.   This same objection is made to
the Stewart letter.   At the time these documents were ad-

mitted ground for their admission in evidence had not been properly laid. However, such error is cured by the subsequent proof of their genuineness by the parties who wrote them. The rule is stated in *Goodwin* v. *Coal Company*, 88 W. Va. 49: "The order of introducing testimony is largely within the discretion of the trial court, and even though it appear that testimony has been introduced at a time that it was not admissible, if the subsequent developments of the trial make it admissible before the case is finally submitted to the jury, a verdict will not be set aside because of the 'premature introduction of such testimony."

There was some evidence introduced as to the quality of the water produced in the well in question. The defendant asked its exclusion and was overruled by the court. It later brought out by a witness that "the water was not good." This was stricken out on motion of the plaintiff. The defendant complains of both these actions of the court. The question here is as to the contract and the acceptance of work and material under the contract. Counsel for defendant frankly admit in their brief that in this view of the case the quality of the water was immaterial. The admission of incompetent evidence over objection will not reverse a judgment when it is clear that such error could have worked no prejudice to the exceptor. *Loverin & Browne Co.* v. *Bumgarner*, 59 W. Va. 46; *Starcher* v. *Oil Co.*, 81 W. Va. 587. Being irrelevant, the exclusion of such evidence, is likewise harmless.

The next error relied on relates to the instructions. At the instance of the plaintiff the jury was instructed: (1) That, if they believed from the evidence that the plaintiff had proved either an express or implied contract on the part of the defendant to pay to the plaintiff for the items contained in its bill of particulars, or any of them, by a preponderance of the evidence, then the jury should find for the plaintiff such items as to which it has so proved such express or implied contract by a preponderance of the evidence, with interest from the time said items were due; and (2) that, if they believed from the evidence that the defendant requested the plaintiff to drill the well deeper so that the defendant could take over and use

it as a water well, and that pursuant to such request the plaintiff did drill said well deeper, and that the defendant did take said well over after it had been drilled deeper for the purpose of using it as a water well, and thereby became liable to pay for said well and the casing therein to the plaintiff, then such liability on the part of the defendant was not destroyed or extinguished as to any part of such liability for said well and casing not paid because they may further believe from the evidence that the Purseglove Mining Company paid a part or parts of said liability. These instructions are based on the theory that, since this is an action on the common counts for work, labor and materials furnished, a recovery may be had on any item set out in plaintiff's bill of particulars, if an implied contract was shown, even if no part thereof was express, or even if there had been an express contract and such contract had failed. For instance, if the casing had been drawn, the whole object of the defendant in obtaining a water well would have been defeated. But the casing was left in the well and turned over to the defendant with said well and used by it for water purposes. Under such circumstances the plaintiff would be entitled to recover the item for casing in the absence of the letter. But here also, the claim is based on the letter and the agreement referred to therein and the interpretation it will bear in the light of all the circumstances of the case. It is a well established canon of construction that where, in a letter, words of general and indefinite signification are used, their meaning will be determined by a consideration, not only of the language used, but of the conditions surrounding the parties at the time, the circumstances under which the letter was written, and the purpose sought to be accomplished thereby; and if the parties have acted under the provisions of such letter, their acts, amounting to a practical construction of it, will be given peculiar weight in coming to a conclusion as to the meaning of the language used. *Butler* v. *Carlyle,* 84 W. Va. 753. The burden of the defendant's complaint to these instructions is that the well in question constituted an interest in real estate that could pass to the defendant only by deed or lease in

writing. As we view it no question of title to water in place, or otherwise, is involved. No sale or purchase of real estate, or any interest therein, being involved, a question of the statute of frauds could not arise. If it had, though, the contract under which the plaintiff seeks to recover here was fully performed and the statute could not be relied on for that reason. *Kimmins* v. *Oldham,* 27 W. Va. 258; *Smith* v. *Black,* 100 W. Va. 433, 130 S. E. 657. So, we are of opinion that under the evidence the plaintiff was entitled to the instructions given. The issue raised by them was squarely met by those given at the instance of the defendant, to the effect: (1) That, if the jury believe from the evidence that the defendant did not agree to pay the claim sued on in this action, nor any part thereof then the jury should find for the defendant; and (2) if they believe from the evidence that the work and labor done and performed and materials furnished, as shown by the bill of particulars in this action, was not at the instance and request, of the defendant then the jury should find for the defendant.

The instructions offered by defendant and refused by the court relating to vested estates and what constitutes an abandonment have as a foundation the provisions of a lease which is not in the record. We are unable to see their pertinency to the issue.

Believing that no prejudicial error was committed at the trial, it follows that the judgment should be affirmed.

*Affirmed.*