E. D. STUMP *v.* WILBUR D. HAROLD *et al.*

(No. 9330)

Submitted October 13, 1942. Decided December 15, 1942.

*Harper & Baker* and *Lively & Lively*, for appellants.
*Bock & Copenhaver*, for appellee.

KENNA, JUDGE:

This chancery proceeding was instituted in the Circuit Court of Kanawha County by E. D. Stump for the purpose of procuring the cancellation of two deeds, the one executed by him and his wife during her lifetime to Virgil Thomasson, dated the twenty-fifth day of April, 1933, conveying his interest in a piece of improved property twenty-five by one hundred and fifty feet on Summers Street in the City of Charleston and also a lot fronting thirty-two and three fourths poles on Pennsylvania Avenue in that city, and the other for the same property bearing the same date from Virgil Thomasson, single, to Myrtle E. Stump, the then wife of E. D. Stump, alleging as ground for the relief sought a total failure of consideration, and making Wilbur D. Harold, Lula Harold, Bernard Harold, Alice Harold, Bess Thomasson, R. Millard Thomasson, Virgil Thomasson, Eleanor Thomasson, alleged to be the sole heirs at law of Myrtle E. Stump, who died intestate on the twenty-fifth day of October, 1938, and others concerned with the record title but not directly affected, parties defendant. There are a number of allegations in the bill of complaint concerning uncontroverted matters of fact, which do not directly relate to the questions of law presented by this appeal, and therefore will not be mentioned.

According to the allegations of the bill of complaint, in the year 1928, plaintiff and his wife entered into a binding oral understanding to the effect that the survivor would receive the entire property of the first to die, and in order to effectuate that understanding they executed mutual

holographic wills, Stump's will devising and bequeathing his entire property to his wife, Myrtle, and she leaving the whole of her estate to him, but that some time in 1933, Mrs. Stump became skeptical concerning the operative effect of her husband's will, so that at her instance and for the purpose of protecting her and allaying her fears, he executed the deed to Thomasson, intermediary, and caused to be prepared and had executed by the intermediary the deed to Mrs. Stump. The bill alleges that Myrtle Stump failed to comply with the understanding, but to the contrary, violated its provisions by leaving no will to Dr. Stump so that her heirs at law wrongfully inherited the real estate conveyed to her by him. This appeal was granted upon the petition of Mrs. Stump's heirs at law to a decree of the Circuit Court of Kanawha County granting the relief prayed for, cancelling the two deeds, and appointing a special commissioner with direction to reconvey the parcels of land described in the bill of complaint to E. D. Stump.

J. L. Stump, the father of plaintiff, died on the eleventh day of March, 1916, and after his death, his wife, Margaret Ellen Stump, was vested with a life estate in the two lots described in the bill of complaint, and also in a lot located on Roane Street in the City of Charleston, with remainder over in the three parcels to their only children, Charles Wilbur Stump and the plaintiff, Charles Wilbur Stump being charged with the management of the property. Plaintiff at that time was an eye, ear, nose and throat specialist practicing in Charleston, and shortly after his father's death resided with his mother, where he met Myrtle Harold, a roomer, whom he married in 1923. They continued to stay at plaintiff's mother's home for a short while after their marriage, but in that year they moved into the Stump building on Summers Street, located upon one of the lots described in the bill of complaint, taking possession of the entire second floor where Dr. Stump's office had been previously located, in addition arranging an apartment and a hospital for the Doctor's patients. Dr. Stump provided the upkeep of the second story, but paid no rent.

Myrtle Stump was from Spencer, and after her marriage she became what may be described as her husband's business secretary, looking after the affairs of his office and hospital. It would seem that Mrs. Stump was quite devoted to her brothers and sisters, who lived in Spencer, for she and her husband formed the habit of going to Spencer at least once a week for the purpose of visiting one or more of her relatives, at times spending weekends and holiday periods in that way.

The only other close associates of Dr. Stump and his wife disclosed by this record are a retired lawyer named William L. Peters and his wife, both of whom they saw frequently, so that Peters became their friendly adviser and it was he that they consulted in 1928 concerning the effective way to carry out their agreement that the survivor should receive all of the property of the first to die. Peters advised them to each execute a will prepared entirely in the handwriting of the signer, and explained to them the legal consequences of so doing. He testifies as a witness for the plaintiff, and states that there was a full discussion concerning the purpose of each, and that some days thereafter both Doctor and Mrs. Stump stated to him without qualification that they had done as he advised and their holographic wills were in their safety deposit box.

In 1933, Mrs. Stump seemed to become dubious as to the effect of Dr. Stump's will, and it was again to Mr. Peters that they went seeking advice. They were told by him that there was no necessity for either of them to execute a further instrument in order to put into effect what may be referred to as their verbal understanding that the survivor would take all, due to the fact that the holographic wills that they had executed would carry out that understanding. Both assured him that it was their purpose to let their wills "stand". Thereafter, Peters did prepare the deeds, the purpose of which was to transfer to Myrtle Stump all of Dr. Stump's property, but which, by mistake, did not include the Roane Street lot. One of the issues vigorously contested is whether the execution of these deeds was in partial fulfillment of their under-

standing that the survivor should take all, or whether avoiding possible future liability for malpractice and preventing Dr. Stump's interests from becoming involved with those of his co-remainderman, Wilbur Stump, in litigation brought by the latter's creditors entered into the consideration. At all events, both deeds were properly executed and recorded.

Toward the end of September, 1937, Dr. Stump became quite ill. For treatment he was taken to Richmond, Virginia, in his mother's automobile, but within a few days it became necessary for him to go to the Mayo Clinic, which he did, accompanied by his mother. She defrayed the entire expense of both trips. Traveling from Richmond to Rochester, they stopped in Charleston, where Myrtle Stump could not be reached. It transpired afterwards that the records of the bank where their safety deposit box was, disclosed that she had opened the box on October 1st.

Myrtle Stump died sometime early in 1938, and immediately after her death, Dr. Stump, accompanied by his brother, Wilbur, went to the Charleston National Bank where they examined the joint safety deposit box for the purpose of finding and probating the will of Myrtle Stump. The envelope in which the will of Myrtle Stump and Dr. Stump had been kept was found, but neither will was in it. Under those circumstances, the vested remainder in the two Charleston lots that had been conveyed to Myrtle Stump by Dr. Stump through the intermediary, Thomasson, would pass to the heirs at law of Myrtle Stump.

Soon after the death of his wife, Dr. Stump had a quitclaim deed to himself prepared, the effect of which was an abandonment on the part of the Harolds, Mrs. Stump's heirs at law, of all interest in the Stump property on Summers Street and in the Pennsylvania Avenue property for which Mrs. Stump had received his deed. That deed the heirs of Mrs. Stump refused to execute.

In addition to the plainly established or admitted facts which we have attempted to state, the depositions taken by both sides deal exhaustively and in detail with oral statements and declarations supposedly made by both

Dr. and Mrs. Stump prior to and after the time that the plaintiff contends they drafted and executed holographic mutual wills, as well as the time in 1933 when the plaintiff conveyed the two parcels of real estate to his wife. Furthermore, evidently for the purpose of impeaching the plaintiff's veracity, there is testimony concerning statements that he made at Spencer when he went there for the purpose of having a quitclaim deed executed by his wife's heirs at law, and statements made by him, or in his presence with his acquiescence, to the general effect that it was his desire to leave all of his property to his wife and her relatives, and to entirely ignore his own blood kin. These numerous oral declarations attributed to the plaintiff were denied by him in detail, with one exception, which was explained in a manner that made it inapplicable to the purpose for which it was introduced. In what follows, those statements will be dealt with generally, it not being feasible to treat them separately.

The three assignments of error briefed and submitted are: (I) that there is insufficient proof to establish that Myrtle Stump ever executed a will containing the provisions referred to in the allegations of the bill of complaint, the evidence concerning her oral declarations being admissible only as corroborative of primary evidence which is entirely lacking; (2) that the oral agreement between Dr. Stump and his wife to permit Mrs. Stump's will to become effective upon her death was clearly in violation of the statute of frauds since it related to the transfer of real estate; and (3) that such oral understanding, if properly proven, was not the sole consideration for the transfer of title to Mrs. Stump, but that the transfer was at least partially supported by the desire to protect her and to avoid the consequence of suits for malpractice. The appellants also contend that under the rule established by this Court in the case of *Rouss* v. *Rouss*, 90 W. Va. 646, 111 S. E. 586, the *obtaining* of a promise to be performed in the future is the true consideration sustaining a transfer of title by deed, and that a future *breach* of that promise in toto is insufficient as a failure of consideration to warrant the conveyance's nullification, and

that under the same case the principle is established in West Virginia that with the exception of transfers made in consideration of support and maintenance, there is no authority for the cancellation of a conveyance for the breach of a promise to be performed in the future on the part of the grantee.

The authorities cited by the appellants in their brief in order to sustain the first point of assigned error mainly relate to the establishment of a lost instrument, and it is, of course, conceded that in cases where that is the relief sought the proof of proper execution and of the instrument's provisions must be quite complete in every required detail, particularly when the instrument in question is to be established as a muniment of title. Here we believe we are not confronted by a situation which invokes that rule of evidence. As we understand it, Dr. Stump is not seeking to set up the will of Myrtle Stump as a valid instrument, nor does he contend that its provisions were more than general, similar to those contained in his will executed at the same time and after consultation with his wife and a friend who acted as attorney for both of them. His contention is that Mrs. Stump's will was purposely destroyed by the testator herself for the very definite purpose of obliterating it. He is only seeking to show the nature of what he lost: he has no direct gain to result from proving her will. Collaterally, of course, it is an integral part of his case, but it is not an element of the relief sought. We believe that the case of *Jefferson* v. *Simpson*, 83 W. Va. 274, 98 S. E. 212, an action in assumpsit brought for the purpose of recovering damages from an executor resulting from his decedent's failure to perform a binding contract by making certain bequests, is closely enough related to the case before us to sustain our view that when a missing instrument relates collaterally to the relief sought, the strict rule of proof in legally resurrecting and establishing a lost instrument is inapplicable. The *Simpson* case is cited by appellants in their brief as sustaining their contention that declarations against interest are not primary proof of the execution of a lost instrument, but the holding in the *Simpson* case relates

only to the establishment of a contract to make a will, not to the instrument itself. This question will be dealt with in the discussion of another point of assigned error, and reasons given for regarding Mrs. Stump's statements as being corroborative only.

In answer to appellants' second point, the appellee takes the position that the understanding between Dr. Stump and his wife that the survivor should take all applied to the property that they each owned at the time they entered into the contract, and since they have shown that subsequent to that time Dr. Stump, at the request of Mrs. Stump, caused to be transferred to her the property in question and thereby fully performed his obligation under the contract, the statute of frauds does not apply, and an oral contract may therefore be shown. Appellants counter by directing attention to the fact that the contract to make mutual wills, if one existed, related to the entirety of the then holdings of each, and that since the deed transferring title to Mrs. Stump did not include the Doctor's interest in the Roane Street property, that it was not a full compliance with the contract on his part, and that being so, that the statute of frauds is operative and does exclude oral testimony. We regard it as unnecessary to cite authority to sustain the broad statement that full performance on the part of the person offering to prove an understanding relieves that understanding from the effect of the statute of frauds (see 31 W. Va. L. Qua. 58 for general treatment), and that, therefore, if otherwise permissible, it may be established by oral testimony. An examination of the West Virginia cases indicates that the rule varies as between law and chancery as to what is required in the way of performance to remove the limit of proof of a contract as prescribed in the statute of frauds, our cases indicating that on the law side complete performance of a bilateral contract by one party to an agreement otherwise within the provisions of the statute, works an exception and permits the contract to be orally established. *Chitwood* v. *Collins*, 122 W. Va. 267, 8 S. E. 2d 830, was a chancery proceeding in which specific performance of a contract to execute reciprocal mutual wills

was decreed by the trial court and sustained here, oral proof of the contract having been permitted due to the full compliance by the party who died testate, leaving a will in accordance with the understanding. As sustaining the proposition stated in its second syllabus point to the effect that a verbal contract is taken out of the statute of frauds by full performance by the side seeking to prove it, the case of *Smith* v. *Black,* 100 W. Va. 433, 130 S. E. 657, is cited. The *Smith* case was an action in assumpsit, and the discussion in the opinion plainly indicates the difference in the rule as between law and chancery, a difference not noted in the *Collins* case. We quote that opinion in part from page 438:

> "But we think the legal rights and justice of the case as between the parties to the suit may properly be determined by the bilateral character of the contract, and the fact that it was fully performed within the year by the plaintiff. And we emphasize the fact that this is not a case of partial performance by one of the parties, but one of full performance by plaintiff. Partial performance will not be sufficient to take a case out of the statute of frauds, but full performance, the authorities say, will do so. Equity alone can relieve in cases of partial performance; or in some cases an action at law based on the quantum meruit will lie. Generally rights depending on ·partial performance are applicable only to sales and purchases of real property, and not of chattels. And when the case, though unilateral, contains several stipulations which are so inter-dependent that the parties cannot reasonably be considered to have contracted but with a view to the performance of the whole, no recovery can be had upon the contract. Browne on the Statute of Frauds, (7th ed.), chap. ix, p. 179, et seq."

We wish to again emphasize the fact that the statute of frauds bears no relationship to the validity of the contract; it relates solely to the type of proof required where its enforcement is sought and its existence not admitted. Its rigid application has been somewhat relaxed on the chancery side, particularly in cases where its strict en-

forcement might result in the perpetration of a fraud. *Sanford* v. *First City Company,* 118 W. Va. 713, 725, 192 S. E. 337. See also, *Cannon* v. *Cannon,* 158 Va. 12, 163 S. E. 405; *Vogel* v. *Shaw,* 42 Wyo. 333, 294 P. 687, 75 A. L. R. 639. Courts of chancery seeking to apply equitable principles have permitted written contracts for the sale of real estate to be enlarged by parol testimony so as to include land shown to be omitted by mistake. *Creigh's Admr.* v. *Boggs,* 19 W. Va. 240, 249; *Fishack* v. *Ball,* 34 W. Va. 644, 648, 12 S. E. 856. If the principle underlying those cases is sound, the requirement of even full performance on the part of Dr. Stump could well be met by holding that his deed to Mrs. Stump, intended by both as a transfer of all of Dr. Stump's property to her, could be regarded by a court of chancery either as constituting a sufficient full performance because treated as such by the parties, or as reformed to include the Roane Street property in so far as it affects the question of performance in a court applying equitable principles, and not adhering strictly to the rule governing courts at law. We therefore reach the conclusion that Dr. Stump's deed to Mrs. Stump is quite clearly at least a partial performance on his part of their oral understanding to have the survivor take all of the property they then owned, and that if that deed is treated in a court of chancery as carrying out a clearly established intention of the grantor and grantee, it is to be regarded as a full compliance.

As to the third point of assigned error, we believe from the showing of this record that while the desire on the part of Dr. Stump in causing the transfer of title to be made to Mrs. Stump could well have been partly to place his property beyond the reach of any future judgment creditors of his own, and in that manner to "protect" his wife, to the extent that those implications entered into this transaction they can be spoken of as casual reasons, rather than as a part of the moving consideration. There had been no occurrence which caused an actual or specific threat of liability. We think that it is quite likely that a physician would discuss that as being one of the persuasive reasons for the transfer. That is all. If the avoidance of

financial responsibility for possible malpractice in general were treated with the consequence sought to be attached to it by the appellants, it would be extremely difficult for a physician to make a valid gift.

The contention of the appellants that the total future failure to comply with a present promise made as the sole consideration for the transfer of land does not spell failure of consideration justifying the cancellation of the conveyance invokes what is called by the writers the English rule which, from the standpoint of abstract logic, and considering that a deed which speaks as of the time of delivery would at that moment be supported by a promise as a valid consideration, is possibly sound, but does not conform to the clear weight of authority in this country, the rule here being that rescission will be granted upon that showing if it also appears that that is the only adequate relief that can be accorded to the person seeking cancellation. The appellants cite and rely upon the case of *Rouss* v. *Rouss*, 90 W. Va. 646, 111 S. E. 586, as sustaining their contention to the effect that the principle followed in this State adheres to the English rule, and that except where the failure of performance involves support and maintenance, the entire disregard of a promise made as the sole consideration for the transfer of real estate does not warrant a cancellation of the conveyance. We do not think that this position is maintainable under the holding of this Court in the *Rouss* case, which, as we read it, does nothing more than to put into effect as substantive law an exception to the general rule, which the former principle reached by a rule of practice. In other words, the rule formulated in the *Rouss* case, as expressed in the first syllabus point, is operative only "in the absence of peculiar circumstances making the performance, rather· than the promise itself, the real consideration * * *." Whereas, the general rule was that chancery granted rescission reluctantly where it appeared that cancellation was the only adequate remedy, it being obvious that the ultimate outcome of the application of one rule would constitute no departure from the application of the other. In this particular matter, we think that it is quite clear

that we are confronted by the peculiar set of circumstances spoken of and made an exception to the enunciated rule in the *Rouss* case, and that there can be no doubt that there is no other method under which this plaintiff could be accorded adequate relief. We think that it is unnecessary to define the "peculiar circumstances" spoken of in the *Rouss* syllabus beyond saying that a showing of no other adequate remedy would fall within that classification. We believe that, so construed, the opinion in the *Rouss* case does not commit this Court to what is commonly called the English rule, and therefore, that it is unnecessary to decline to follow the principle there enunciated. It would be rather difficult to overrule a principle subject to such a broad general exception, even though it is spoken of by Mr. Williston as "inaccurate".

As to whether testimony of Dr. Stump concerning the statements made by Mrs. Stump was properly admissible under the provisions of Code, 57-3-1, by examining the record we have attempted to single out the statements that were, and those that were not, properly objected to at the time offered, those that were stated by the respondents in chief and those developed on their cross-examination, and those that were prejudicial as distinguished from those that were not, with the result that we are of the' opinion that the trial chancellor committed no apparent prejudicial error in applying the rule stated in *Hall* v. *Linkenauger*, 105 W. Va. 385, 142 S. E. 845.

In conclusion we wish to say that we are of the opinion that the circuit court was right in stressing the fact that the testimony of William L. Peters, uncontradicted and clear, is sufficient to sustain the prayer of the bill. It deals directly with the fact of the understanding having been entered into and with the fact of the two deeds having been executed for a certain purpose. His testimony is plainly the foundation upon which statements against interest could be admitted as corroboration only.

In view of the foregoing, the decree of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*