James Neil NESBETT, Appellant,

v.

George H. NESBETT, Jr., Appellee.

No. 16990.

Court of Civil Appeals of Texas.

Dallas.

Dec. 1, 1967.

Rehearing Denied Dec. 29, 1967.

———◆———

Lee S. Bane, Dallas, for appellant.

Wm. F. Billings, Charlie Wise, Dallas, for appellee.

BATEMAN, Justice.

The sole question here is whether the joint will of George H. Nesbett, Sr. and his wife Jean is so contractual as to be irrevocable by the survivor. Both the probate court and the district court held that it was not. We agree.

George H. Nesbett, Sr., was married twice. The appellant James Neil Nesbett and the appellee George H. Nesbett, Jr., were sons of the first marriage. The second wife of George Sr. was Jean Nesbett, who had a niece named Marcello Thomas Snow, but no children. On July 12, 1956 George, Sr. and Jean signed a joint will, the pertinent parts of which are:

"* * * we, George H. Nesbett, Sr., and Mrs. Jean Nesbett, husband and wife, * * * for the purpose of making the best disposition of our worldly affairs, do hereby make and publish this our Last Will and Testament, * * *.

"1.

"We direct that all our just and lawful debts, if any, and our funeral and burial expenses be paid by the Executor or Executrix, as the case may be, * * *.

"2.

"It is our will and desire, and we so direct that the survivor of us * * * shall, with all the rights and authority below given, have all the estate of every kind and description that we have accumulated during our marriage, to be used, occupied, enjoyed, sold, conveyed and expended by the survivor, as such

survivor may desire, with the power of sale; however, should *their* be any of said community property remaining at the time of the death of the survivor of us, then in that event ONLY, we hereby give, devise and bequeath the remainder, if any, as follows:

"(a)   One-half (½) to Marcello Thomas Snow.

"(b)   One-half (½) to George H. Nesbett, Jr., and James *Neal* Nesbett, share and share alike, if one of them be deceased, the survivor of them shall take all of such remainder.

"3.

"It is our will and desire, and we so direct that the survivor of us, * * * shall have all our separate property and estate of *ever* kind and character, to be used, occupied and enjoyed by the survivor of us, so long as such survivor of us may live, and upon the death of such survivor, then in that event ONLY, we give, devise and bequeath the remainder of such separate property and estate to George H. Nesbett, Jr. and James *Neal* Nesbett, they shall share and share alike, if one of *the* should be deceased, the ·survivor shall take all of our said separate property and estate.

"4.

"It ıs our will and desire and we so direct that the survivor of us be appointed Independent Executor or Executrix of this our Last Will and Testament, and that no bond be required of such Executor or Executrix.

"5.

"Should we * * * be killed at or near the same time or should we die from any cause at or near the same time, then in that event ONLY, we hereby constitute and appoint George H. Nesbett, Jr. as Independent Executor and that no bond shall be required of him as such Executor."

After her husband's death in 1959 Mrs. Jean Nesbett filed the said will for probate as his last will and qualified as executrix thereunder. She executed another will, dated May 16, 1963, leaving all of her property to appellee George H. Nesbett, Jr. She died in 1965. Appellee filed the later will for probate. Appellant contested it and offered the joint will of July 12, 1956 for probate as Jean's last will.

The only testimony introduced was that of the attorney who had prepared, and was one of the subscribing witnesses to, both wills. It was stipulated that his testimony established that both wills were properly executed and witnessed. He also testified that when George, Sr. and Jean met in his office to execute the joint will, there was no discussion about whether or not the instrument would constitute a contract, but that "they wanted a joint will prepared and wanted it such that when one died the other one could do exactly what they wanted with it." He said that he drew the will according to their wishes, after much discussion. When asked whether they requested that it be the one instrument, he replied: "Yes, they wanted it, wanted a joint will, wanted it where they could leave it to whoever they wanted to after one had died."

At the conclusion of a nonjury trial on appeal from the probate court, the district judge admitted the will of May 16, 1963 to probate and denied probate of the joint will. In a single point of error on appeal the appellant says this was error because the joint will was mutual and contractual.

It is conceded that Mrs. Jean Nesbett was fully qualified, as to age and testamentary capacity, to make the will of May 16, 1963. Her only disqualification, appellant says, lies in the circumstance that she had contracted with her husband that she would not do so. No such express agreement is found in the joint will, or elsewhere in the record. Therefore, if she be found to have bargained away this important element of the ownership of property, i. e., the right

to dispose of it by will, her contract to do so must be implied in the language of the 1956 will.

There has been much litigation involving contractual wills and the subject has been discussed in several law review articles. An analysis of such authorities points up the inescapable conclusion that, due to the singularity of each family situation, to say nothing of the divergent views of the appellate courts of the country, there is great disparity among the decisions, not only in the results, but in the theories upon which such results are reached. See Young, "The Doctrinal Relationships of Concerted Wills and Contract," (1951) 29 T.L.R. 439; Bailey, "Contracts to Make Wills—Proof of Intent to Contract," (1962) 40 T.L.R. 941; Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621, 625 (1957); Annotation, "Joint, Mutual and Reciprocal Wills," 169 A.L.R. 9. These law review articles discuss the leading cases in Texas and other jurisdictions in considerable detail. We think it would serve no good purpose for us in this opinion to attempt to analyze the numerous Texas cases on the subject and show the applicability *vel non* thereof to the facts of this case, but will endeavor to decide this case on principles of law which seem to be fairly well established.

■ In the first place, the burden was on the appellant to prove that the joint will was "contractual" as well as testamentary in character. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1 (1946).

There being no extrinsic proof of an agreement to make a mutual, irrevocable will, appellant relies on the language of the will itself to prove that it was signed pursuant to such a contract, directing our attention to the use of the words *we, us* and *our* in the will, the equal division of the community property between the two families after the death of the survivor, and the joint execution of the will.

■ As held in Nye v. Bradford, supra, the mere making of a joint will does not

of itself prove that it was made pursuant to a contract, but the will may, by its terms or in its recitals, conclusively prove or tend to prove that it is based on or executed in furtherance of a contract. See also Wagnon v. Wagnon, 16 S.W.2d 366, 369 (Tex.Civ.App., Austin 1929, writ ref'd); Sherman v. Goodson's Heirs, 219 S.W. 839 (Tex.Civ.App., Texarkana 1920, writ ref'd). The phraseology of this will certainly does not establish *conclusively* that it is based on or executed in furtherance of a contract to make a joint will which would be irrevocable by the survivor. The use of the words *we, us* and *our* cannot be given that effect any more than the mere fact that both Mr. and Mrs. Nesbett signed a joint will. City of Corpus Christi v. Coleman, 262 S.W.2d 790, 794 (Tex.Civ.App., San Antonio 1953, no writ).

We think there is much force to appellee's argument, that the language used in this joint will suggests the implication that the makers were in agreement that the survivor would have the right of revocation and to change the plan of disposition of their property. Although they provided that the survivor should be the independent executor of the first to die, and that appellee be appointed as executor if the makers should be killed or die at or near the same time, no provision was made for the appointment of an executor for the survivor dying a natural death not at or near the time of the death of the other. It is argued logically, we think, that this suggests agreement that the survivor in those circumstances should have the right and would be expected to make a separate will after the death of his or her spouse.

But it is not necessary to rest this conclusion solely on an interpretation of the will itself. We have the benefit of the testimony of the attorney who drafted it according to the instructions and wishes of Mr. and Mrs. Nesbett and who says that they "wanted a joint will, wanted it where they could leave it to whoever they wanted to after one had died." This, in our opinion, is sufficient to support the judgment of the trial court.

We conclude, therefore, that appellant failed to carry the burden of showing that Mrs. Jean Nesbett had so contracted with her husband respecting the making of the joint will as to destroy her᾿ statutory right * to make the later, separate will, and that no facts were shown which would in equity estop her from doing so. Therefore, appellant's point of error is overruled and the judgment appealed from is

Affirmed.