**William C. KASTRIN et al., Appellants,**

**v.**

**Arlen JANKE et al., Appellees.**

**No. 5922.**

Court of Civil Appeals of Texas.

El Paso.

Sept. 18, 1968.

Rehearings Denied Oct. 16, 1968.

Hardie, Grambling, Sims & Galatzan, Scott, Hulse, Marshall & Feuille, El Paso, for appellants.

Arturo R. Aguirre, Gerald B. Shifrin, El Paso, for appellees.

## OPINION

FRASER, Chief Justice.

This is a suit by appellees to establish and enforce a purported contract for mutual, contractual wills. Appellees sued William C. Kastrin, individually and as Independent Executor of the Estate of Alexander F. Janke, Sr., and El Paso National Bank, as Temporary Administrator of said estate, for judgment that an alleged contract was made between Alexander F. Janke, Sr. and his wife, Lina Janke, (both deceased) whereby said decedents made alleged mutual wills dated May 22, 1953, and for specific performance of such purported contract, so as to award appellees one-half of the entire estate of Alexander F. Janke, Sr. who died after his wife; or in the alternative to impress a constructive trust in favor of appellees upon the entire estate of Alexander F. Janke, Sr. Based upon the jury verdict and independent findings by the trial court, a final corrected judgment was rendered against William C. Kastrin and El Paso National Bank, from which they prosecute this appeal.

Appellants maintain that there is no evidence that the wills herein involved were contractual or mutual or irrevocable in any way. We will discuss this matter in the light of the appellants' general position rather than adhering strictly to numbered points.

■ It has long been held that one who contends that a joint will or mutual wills are contractual as well as testamentary in character has the burden to make such proof, or, in other words, to prove his contention that the will or wills are contractual in nature and came about as the result of a mutual agreement by both parties. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Kirk v. Beard, 162 Tex. 144, 345 S.W.2d 267; Nesbett v. Nesbett, Tex.Civ.App., 422 S.W. 2d 746, and cases cited therein.

Courts have usually been presented with proof that the wills are mutual and irrevocable and came about as the result of a prior agreement whereby each party agreed to execute the will in question in return for the execution of will satisfactory to him by the other party.

First, we must examine the wills in question here to see if they contain any language that makes them contractual in nature as well as mutual and irrevocable. We do not find any such language in the wills in question. It is true they are somewhat similar, but there are differences as to executors, etc.; but even though they are basically similar, we do not find sufficient or adequate language within the wills themselves to sustain the contention by appellees here that such wills are mutual and irrevocable. We do not reproduce the wills, as it would only burden the opinion, but we do hold that the two wills of Papa and Mama Janke do not contain any language to sustain the appellees' contention as set forth above.

We pass now to whether or not there is any extrinsic evidence to establish that Papa and Mama Janke entered into an oral contract to make their wills mutual and irrevocable. We do not find that there is extrinsic evidence present in this record to sustain that point. Witness Webber, called by the appellees, could not and did not testify that either Papa or Mama Janke told him or indicated to him that they were making contractual, irrevocable wills. His testimony merely indicates that they said they were making wills leaving the stuff to each other. Webber further testified that Papa and Mama Janke had many arguments and he stated that they fought like cats and dogs about it and finally came to the agreement that the first one that died, the other would get it all. It is evident from the record here that Mr. Webber was in on many discussions and consultations between Papa and Mama Janke. He also testified that Mama Janke told him they had made similar wills and each was leaving the stuff to the other. This, of course,

is in no manner contractual, and as we have pointed out, there is no wording in the will of either one indicating that the provision of one will is based on the agreement and acquiescence of the other party to make some similar provision. Mr. Wieland, the other witness and a relative, does not testify to any knowledge of the existence of any contractual or irrevocable agreement to be inserted in the wills that Papa and Mama Janke were going to make. We must therefore hold that there is no evidence here from the wording of the wills themselves or from the testimony of the witnesses that would sustain the appellees' contention that the wills were mutual, contractual and irrevocable. Appellants called a Mr. Carlton, a C.P.A., who testified that he had discussed this matter with Papa and Mama Janke for several months and knew of no contract or agreement regarding the making of the wills, and that the wills had been read over by the attorney and explained to both parties before they signed them. Mr. Carlton further testified that the attorney, Mr. Peticolas, explained to Mr. and Mrs. Janke at the time they executed their wills that they could subsequently change their wills if they wanted to, and that he, Mr. Carlton, also told them that they could execute the wills now and if their desires or wishes changed later on, they could make new wills or change those. Mr. Peticolas, the attorney, testified that neither Papa nor Mama Janke said anything to him about contemplating or making any kind of an agreement between themselves as to how the wills would be made out. He further testified that during the preparation of the wills and the discussion thereof, there was no mention made of any written contract relating to the real estate; and lastly he, Mr. Peticolas, at the time of the execution of the wills on May 22, 1953, read the wills to Mr. and Mrs. Janke and asked each of them if that was the will they wanted, and that both said "yes" and that at no time during that conference did either Mr. or Mrs. Janke say anything about having made any kind of agreement or contract with each other with reference to making their wills; and Mr. Peticolas was very certain of that point, as he stated that he was as sure of that as "that I am sitting here".

We have searched the record and do not find any evidence of any agreement between Mr. and Mrs. (or Papa and Mama) Janke regarding their wills. The testimony taken at its best simply is to the effect that they agreed to make wills; but there is no evidence that they agreed as to what would go in the wills and, more important, there is no testimony that they had any agreement that the wills would be irrevocable and contractual in nature.

It has long been held that there must be a valuable consideration to support a contract to make mutual wills, and as stated in Kirk v. Beard (supra), if two parties verbally agree each in consideration of the other doing likewise, to make their wills disposing of their properties in a specific manner, and one dies leaving a will which complies with the contract, and the survivor accepts benefits under the will, he must comply with the agreement, or equity will step in to prevent a fraud or to estop the survivor from pleading the statute of frauds because of the performance or part performance. Again we point out that there is no evidence that Mr. and Mrs. Janke verbally or in writing agreed, each in consideration of the other doing likewise, to make their wills disposing of their properties only in a specified manner, and so there are no mutual promises in evidence which amount to a valuable consideration sufficient to support the alleged contract and make mutual wills. There are many articles speaking on this point, but we will not burden the record with all of them, but believe the matter is well summed up by the statement in 97 C.J.S. Wills § 1367, at page 299. In that text it is pointed out that the agreement must be definite, defined or certain in all its parts, and clear, both in its terms and as to the subject matter. This text goes on to point out further that the agreement, in order to make the wills mutual and enforceable, must be more than a mere agree-

ment to make wills. It must involve the assumption of an obligation to dispose of the property as therein provided, or not to revoke such wills, which are to remain in force at the death of the testators. Again we must point out from the evidence herein that there seems to be nothing more than an agreement, after many bitter discussions between Papa and Mama Janke, that they would make wills. Such wills were made, read to them and properly attested. There is no evidence of any consideration or irrevocability. Then, in Dufner v. Haynen, 263 S.W.2d 662 (Tex.Civ.App., err. ref. n. r. e.), the court states that before a joint will can be construed as also being a mutual will, it must be shown, either from extrinsic evidence or upon the face of the will itself, that the parties had entered into a contract to make a joint disposition of their property, and the burden of proof is upon the party so contending. This case cites many other cases in support of its holding. It will be noted that in many cases and articles, no distinction is made between reciprocal or joint wills, Here, we do not have a joint will, but two wills that are basically similar. Courts have also stated that a contractual will or a contract to make mutual wills, must be supported by evidence sufficiently clear for the court to determine what the terms of the contract were without resorting to inference or conjecture. Kirk v. Beard, supra; Dyess v. Rowe, Tex.Civ.App., 177 S.W. 1001 (wr. ref.). In the matter before us the appellees, in order to recover, had the burden of establishing by clear and satisfactory proof of the foregoing elements of mutual wills and of securing jury findings to the effect that the Jankes agreed that the first would make a will in the manner set forth in such will in consideration of the second party making a will in the manner set forth in the second party's will, and that the wills were made and executed pursuant to such an agreement. Kirk v. Beard (supra); Pullen v. Russ, 226 S.W.2d 876 (Tex.Civ.App., n. r. e.). Other cases in support are Nye v. Bradford (supra); Nesbett v. Nesbett (supra). See also Meyer v. Texas National Bank of Commerce of Houston, Tex., 424 S.W.2d 417.

■ In summation, we must and do hold that there is no language in the wills making them contractual or irrevocable in any part; that the extrinsic evidence goes no farther than to say that Papa and Mama Janke had agreed on a disposition of their property and had agreed to make wills. Nowhere in the evidence can we find any agreement that meets the test as set forth above. Nowhere does anyone testify that one Janke would make his or her will in a certain manner provided the other made his or her will in a manner suitable to the first party. In other words, we can find no agreement of a contractual nature and no agreement that any part of either will would be irrevocable. On the contrary, we have evidence as set forth above that the attorney told both parties at the time of the execution of their wills that they could change them if they wished. Lastly, as we have pointed out, there is nothing in the wording of the wills themselves to support the contention that they are contractual or irrevocable in any shape or form, in part or in whole.

While the appellants have presented and briefed some 50-odd points, we think our disposition of the points herein discussed satisfactorily disposes of the case on appeal. We see no need to discuss all of the other points presented by appellant.

Appellants call our attention to the fact that only two issues were submitted and that they are insufficient to dispose of the controversy. We think this contention is sound. These issues are as follows:

"Special Issue No. 1

"Do you find, from a preponderance of the evidence, that on or before the 22nd day of May, 1953, Alexander F. Janke, Sr. and Lina Janke entered into an agreement between themselves regarding the disposition of their respective property

in the event of their death? Answer 'Yes' or 'No'.

WE ANSWER: 'YES'

If you have answered 'yes' to the preceding special issue, then but not otherwise answer the following issue:

"Special Issue No. 2

"Do you find, from a preponderance of the evidence, that pursuant to such agreement, if any, Alexander F. Janke, Sr. and Lina Janke executed their Wills dated May 22, 1953? Answer 'Yes' or 'No.'

WE ANSWER 'YES' "

We do not believe these issues are decisive in nature of the matter before this court. We think they are lacking in the basic elements that we have discussed heretofore. In short, all that the two issues hold is that Mr. and Mrs. Janke entered into an agreement between themselves regarding the disposition of their respective property, and executed their wills of May 22, 1953 in pursuance of such agreement. These issues do not inquire or find that there was anything contractual or irrevocable in the agreement that the jury found Papa and Mama Janke to have made, and they are therefore indecisive of the matter before us. There is no direct inquiry seeking to elicit information as to whether one issued his or her will in a certain manner in consideration of the other Janke executing his or her will in a manner agreeable to the first party. Therefore we must hold that these issues do not decide the essential elements of this matter and are not sufficient to determine whether parties have made a contractual will, or one that is irrevocable or contains irrevocable provisions.

For the reasons set forth above, we hold that the judgment of the trial court must be and is reversed, and judgment here rendered that appellees take nothing.

CLAYTON and PRESLAR, JJ., concur.